A. PHILIP ERWIN, *et al.*

*v.*

BETHLEHEM STEEL CORPORATION, *et al.*

(CC 761)

:Submitted October 3, 1950.  Decided November 21, 1950.

*Tusca Morris, A. Blake Billingslea,* for plaintiffs.

*Amos & Amos, Robert W. Lowe,* for defendants.

HAYMOND, JUDGE:

The plaintiffs, A. Philip Erwin, Agnes B. Erwin, John J. Erwin and J. Paul Erwin, owners of a tract of land of approximately 49.21 acres in Fairmont District, Marion County, except certain underlying veins of coal and mineral, in this action of trespass on the case instituted in the circuit court of that county in the early part of 1949, seek to recover from the defendants, Bethlehem Steel Corporation, Industrial Collieries Corporation and Bethlehem Collieries Corporation, damages in the amount of $10,-000.00 for injuries caused to their surface by the defendants in failing to provide adequate subjacent support in mining the underlying Pittsburgh vein of coal owned by one of the defendants and operated by all of them. To the declaration, which contains two counts, the defendants filed a special plea to which the plaintiffs demurred. The circuit court sustained the demurrer to the special plea and by order entered July 22, 1949, certified its ruling to this Court.

Two deeds of severance of coal, including the Pittsburgh vein, from the overlying surface, granting or reserving coal and mining rights, a deed of original conveyance of coal and mining rights from the owner under a reservation in one of the deeds of severance, and a deed conveying the land, except certain underlying veins of coal and mining rights, upon which deeds the plaintiffs and the defendants respectively base their opposing con-

tentions, were made a part of the record by the action of the respective parties in craving oyer of the declaration and the special plea.

The legal sufficiency of the declaration is not challenged by demurrer and its allegations are not denied by any plea of the general issue. To the extent that they are well pleaded, the material facts alleged in the special plea are regarded as true upon the demurrer of the plaintiff to the plea.

At the time of the institution of this action, and for several years previously, the plaintiffs were the owners of a tract of land containing approximately 49.21 acres, except certain underlying veins of coal and mineral, among which is the Pittsburgh vein of coal, and mining rights for their removal. The land of the plaintiffs is suitable for agriculture and grazing and has been used by them for those purposes. The underlying Pittsburgh vein of coal and the mining rights, for some time before, and since, April, 1947, have been owned by the defendant Bethlehem Steel Corporation and at and prior to that time the coal in that vein was mined and removed by it and the defendants, Industrial Collieries Corporation and Bethlehem Collieries Corporation. As a result of their operations in mining and removing the coal and their failure to provide sufficient support for the overlying surface owned by the plaintiffs their land has been caused to break, crack and subside and large holes and fissures have occurred on the surface and in certain strata and mineral owned by the plaintiffs.

The tract of 49.21 acres owned by the plaintiffs is composed of portions of two adjoining tracts of land, one of 58-½ acres, formerly owned by John S. Smith, and the other of 158 acres, formerly owned by James Fleming. By deed dated September 26, 1865, John S. Smith conveyed the 58-½ acre tract to the children and heirs of his son, James J. Smith, which deed contained an express reservation of "all of the coal and mineral underlying said tract or parcel of land except the top or surface vein—

and the right to dispose of or sell said coal and mineral and make a deed therefor—the same as tho this deed had not been made." Later, by deed dated June 3, 1873, John S. Smith and wife conveyed all of the coal in the 58-½ acre tract, except the top or third vein, to James O. Watson and A. B. Fleming, with the right "to enter upon and under said land and mine and remove the said coal at pleasure, and the right of way upon and under said land to mine and market the coal under said land and adjacent lands." On May 23, 1873, by deed of that date, James Fleming and wife conveyed all of the coal, except the top or third vein, in the tract of 158 acres to James O. Watson and A. B. Fleming with the right "to enter upon and under said lands and mine and remove the coal hereby conveyed at pleasure, and the necessary right of way to mine and remove the coal in adjacent lands." The Pittsburgh vein of coal, which was reserved or conveyed by the foregoing two deeds of severance of the surface and the top vein of coal from the other veins of coal, with the mining rights and privileges for its removal, passed to and is owned by the defendant Bethlehem Steel Corporation, by virtue of various mesne conveyances.

The greater portion of the tract of 49.21 acres, owned by the plaintiffs, including the top or third vein of coal, except the coal and the mining rights conveyed by the foregoing two deeds from John S. Smith and wife and James Fleming and wife to James O. Watson and A. B. Fleming, appears to have been granted, by its original owners, John S. Smith and James Fleming, or by James Fleming, and other succeeding owners, by various mesne conveyances to A. B. Fleming. The deeds under which A. B. Fleming acquired his title are not mentioned in the pleadings and the record as to them is not clear. At any rate, A. B. Fleming and wife, by deed dated April 5, 1899, conveyed a large part of the 49.21 acres, as a tract of 50 acres, more or less, except one acre, to J. L. Erwin. The one acre excepted by the deed of April 5, 1899, was subsequently acquired by J. L. Erwin from another grantor and is not affected by the provisions of that deed. It is,

however, subject to the provisions of the deed of severance of the underlying coal, dated May 23, 1873, from James Fleming and wife to James O. Watson. The remaining portion of the tract of 49.21 acres owned by the plaintiffs, consisting of .18 of an acre, was conveyed by deed dated March 27, 1902, to J. L. Erwin by the heirs of James J. Smith, to whom it was granted by the above mentioned deed of John S. Smith, dated September 26, 1865, and the deed from the heirs of James J. Smith to Erwin was made subject to the reservation of the coal and the mineral in the deed of severance of September 26, 1865. The deed from A. B. Fleming and wife to J. L. Erwin, with respect to coal, contained these provisions: "The parties of the first part except and reserve and do not herein convey so much of the coal underlying said land as was conveyed by James Fleming and wife to A. B. Fleming and J. O. Watson, and which has since been conveyed to and now belongs to The Gaston Gas Coal Company, a corporation; the coal as excepted and which is not herein conveyed includes the Pittsburgh vein of coal now being worked by the said company and all the other veins of coal except the second vein above said Pittsburgh vein known as the third vein, which third vein is not herein excepted and reserved, but is included in this conveyance. There is also excepted and reserved the right to mine, excavate and remove all of the coal not herein conveyed, and which belongs to the said The Gaston Gas Coal Company, and all the mining rights and privileges necessary and convenient for the mining and removing of said coal and the coal from adjacent, neighboring and coterminous lands to market, which mining rights are vested in and belong to said company."

The plaintiffs derive their title to the 49.21 acre tract of land, except the severed veins of coal and mineral and the mining rights for their removal, by mesne transfers from J. L. Erwin who, as already pointed out, acquired its ownership under the deeds to him from A. B. Fleming and wife, another grantor, and the heirs of James J. Smith. By his will J. L. Erwin devised his estate in the

land to his wife, Nellie F. Erwin, and the plaintiffs, his children, in equal shares. The plaintiffs later conveyed their interests to Nellie F. Erwin and after her death the executor of her will, who was authorized to do so, conveyed the 49.21 acre tract, except the severed veins of coal and mineral and the mining rights, to the plaintiffs by deed dated December 14, 1937.

The declaration charges, in substance, that the defendants, in mining and removing the Pittsburgh vein of coal in the tract of 49.21 acres, in violation of the right of the plaintiffs to subjacent support for the surface of their overlying land, failed to leave sufficient pillars and blocks of coal to support the surface of such land in its natural state and caused it to break, crack and subside, with resultant damages to the plaintiffs in the amount of $10,000.00.

In the first count of the declaration the plaintiffs base their right to recover on the theory that the defendants, as trespassers, failed to observe their duty to provide adequate subjacent support for the surface of the overlying land and, in mining the Pittsburgh vein of coal, wrongfully deprived the plaintiffs of subjacent support for the surface of their land. In the second count the plaintiffs charge that the defendant, Bethlehem Steel Corporation, as owner, and it and the other two defendants as operators, in mining and removing the Pittsburgh vein of coal, under the deeds of severance, owed the plaintiffs, as owners of the overlying land, the duty to leave sufficient subjacent support for the surface of their land and failed to observe and discharge that duty.

By their special plea the defendants deny any right in the plaintiffs to subjacent support for their surface overlying the Pittsburgh vein of coal mined by the defendants and assert that the right of subjacent support for the surface owned by the plaintiffs was waived, excluded and parted with in the deeds of severance of that vein of coal; that the mining rights granted with the coal entitle the owner of the Pittsburgh vein of coal to remove all of it

without being required to provide support for the overlying surface; and that J. L. Erwin, the predecessor in title of the plaintiffs, by his acceptance of the deed of April 5, 1899, from A. B. Fleming and wife, recognized, confirmed and preserved the right of the owner of the Pittsburgh vein of coal underlying the land conveyed by that deed to remove all of that vein of coal free of any duty upon the part of the owner of such coal to furnish support for the surface of the land so conveyed.

The controlling question presented by the certificate of the circuit court is whether the plaintiffs, under the deeds of severance, the original deed for the coal reserved by one of the deeds of severance, and the deed from A. B. Fleming and wife to J. L. Erwin, are entitled to adequate support for the surface of their land which overlies the Pittsburgh vein of coal mined and operated by the defendants.

The legal principles governing the right of the landowner to subjacent support for the surface of his land when there has been a severance of the land from the coal and the minerals were considered and discussed at some length in the recent case of *Winnings* v. *Wilpen Coal Company*, 134 W. Va. 387, 59 S. E. 2d 655. For that reason it is unnecessary to discuss in this opinion the principles stated and applied or the authorities cited and referred to in the opinion in that case. In the *Winnings* case this Court held that a deed of severance of the surface from the underlying coal in a tract of land which granted all the coal and contained a mining clause which conveyed "all necessary and convenient rights of way of ingress or egress in, over and through said land for the purpose of mining and removing said coal and other mineral or minerals upon other adjacent lands" did not divest the owner of the surface of the land of his absolute right to subjacent support for the surface in its natural state and did not relieve the operator of the coal of liability to the owner of the surface for damages for breaks in and subsidence of the surface caused by the mining of the underlying coal. The rule of property adopted and applied in

*Griffin* v. *Fairmont Coal Company*, 59 W. Va. 480, 53 S. E. 24, 2 L. R. A., N. S., 1115, and *Simmers* v. *Star Coal and Coke Company*, 113 W. Va. 309, 167 S. E. 737, cited and relied on by the defendant in that case and invoked by the defendants in this case, was held to be inapplicable to the provisions of the deed of severance involved in the *Winnings* case.

There is no substantial difference in the meaning or the effect of a grant of "all the coal" and the right to remove the "said coal" in the deed of severance considered in the *Winnings* case and the reservation of "all of the coal and mineral underlying said tract or parcel of land except the top or surface vein—and the right to dispose of or sell said coal and mineral and make a deed therefor —the same as tho this deed had not been made", or the grant of "all of the coal", except the top or surface vein, and the right "to enter upon and under said lands and mine and remove the coal hereby conveyed at pleasure", in the respective deeds of severance made by John S. Smith to the children and heirs of James J. Smith, dated September 26, 1865, and by James Fleming and wife to James O. Watson and A. B. Fleming, dated May 23, 1873, or the grant of "all of the coal", except the top or surface vein, and the right "to enter upon and under said land and mine and remove the said coal at pleasure" in the deed made by John S. Smith and wife to James O. Watson and A. B. Fleming, dated June 3, 1873, under all of which, through various mesne conveyances, the defendants acquired their rights to mine and remove the Pittsburgh vein of coal. The principles governing the right of subjacent support, stated and applied in the *Winnings* case, are controlling in this case and their application leads to the conclusion that the language of the foregoing deeds did not waive, exclude or part with the right of the landowner to adequate subjacent support for the surface of his overlying land in its natural state from the owner of the severed coal in mining and removing such coal. A landowner who conveys the coal underlying his land has an absolute property right to subjacent support for the surface of his overlying land in its natural state and he

will not be deemed to have conveyed, parted with, or extinguished his right to such subjacent support unless his intention so to do clearly appears from express language or by necessary implication. The applicable provisions of the deeds upon which the defendants base their claim to the right to remove all the Pittsburgh vein of coal without being required to provide adequate support for the surface of the overlying land of the plantiffs do not evince the intention of the landowners, in any of them, to waive, exclude, part with, convey or extinguish the right of adequate subjacent support for the surface of the overlying land.

The defendants contend that the predecessor in title of the plaintiffs, J. L. Erwin, by accepting the deed from A. B. Fleming and wife, dated April 5, 1899, which excepted and reserved "so much of the coal underlying said land as was conveyed by James Fleming and wife to A. B. Fleming and J. O. Watson, and which has since been conveyed to and now belongs to The Gaston Gas Coal Company, a corporation;", and the right "to mine, excavate and remove all of the coal not herein conveyed, and which belongs to the said The Gaston Gas Coal Company, and all the mining rights and privileges necessary and convenient for the mining and removing of said coal and the coal from adjacent, neighboring and coterminous lands to market, which mining rights are vested in and belong to said company", recognized, confirmed and preserved the right of the owner of the severed coal to remove all of it without being required to provide support for the overlying surface of the land of the plaintiffs.

The foregoing contention is without merit. The language of the quoted exception and reservation in the deed of April 5, 1899, could not, and did not, modify or enlarge the right already existing in favor of a person not a party to that deed and which had been created and conferred upon such person under prior conveyances made by the predecessors in title of the grantors in the deed to Erwin. But even if that deed could have that effect, its provisions do not indicate that the grantors in that conveyance in-

tended to waive or extinguish any right of subjacent support for the surface of the land conveyed to Erwin, overlying the severed coal, or that Erwin, in purchasing it and in accepting the deed, had any idea that he was deprived of subjacent support for the surface of the land conveyed by the deed. It is unreasonable to infer that he would have purchased the tract of land from Fleming if he had understood or believed that the owner of the severed coal possessed the right to damage or destroy the surface of his overlying land by mining and removing all of the underlying coal, and nothing to indicate that he entertained that belief appears from the language of the deed.

In *Beardslee* v. *New Berlin Light and Power Company,* 207 N. Y. 34, 100 N. E. 436, Ann. Cas. 1914B, 1287, the opinion contains this statement: "It is elementary law, stated in every text book on the subject, that a reservation or exception in favor of a stranger to a conveyance is void or inoperative. (Washburn on Real Property, Section 2354; Devlin on Deeds, Section 979; *Pearson* v. *Hartman,* 100 Pa. 84; *Wadsworth* v. *Smith,* 11 Me. 278, 26 Am. Dec. 525; Fowler's Real Property (2d ed.), 186; Sheppard's Touchstone, 80)". See also *Gwinn* v. *Gwinn,* 77 W. Va. 281, 87 S. E. 371; *McDougal* v. *Musgrave,* 46 W. Va. 509, 33 S. E. 281; 16 Am. Jur., Deeds, Section 299; 26 C. J. S., Deeds, Section 138. In *Beckley National Exchange Bank* v. *Lilly,* 116 W. Va. 608, 182 S. E. 767, 102 A. L. R. 462, this Court said: "A reservation to a stranger to the instrument is void for all purposes. The fact that this is so has inclined the courts, in order to save the substance, to construe provisions intended for the benefit of strangers to the instrument as exceptions rather than as reservations. This, however, does not mean that as an exception a provision may operate actually to vest rights in a third person not a party to the instrument." "An exception in a deed cannot be made in favor of a stranger. It can only recognize and confirm rights already existing in strangers. 8 Ruling Case Law, 1093, Section 150. 18 Corpus Juris, 359, paragraph 373." *Deaver* v. *Aaron,* 159 Ga. 597, 126 S. E. 382, 39 A. L. R. 126. In 8 R. C. L. 1093, the rule is stated in this

form: "Neither a reservation nor an exception can be made in favor of a stranger, and the grantee is not estopped so to assert by acceptance of the deed, but an exception may recognize and confirm rights already existing in strangers." In *Gwinn* v. *Gwinn,* 77 W. Va. 281, 87 S. E. 371, this Court, citing *Bridger* v. *Pierson,* 45 N. Y. 601, used this language: "A deed may by reservation preserve an existing right of way in a stranger but cannot create it." And a reservation in a deed will be strictly construed against the grantor. *Wall* v. *Landman,* 152 Va. 889, 148 S. E. 779. From the foregoing authorities it is evident that an exception or a reservation in favor of a stranger to a conveyance is void or inoperative to the extent that it may undertake to create or vest a new right or interest in his favor, or to enlarge or extend his then existing right or interest, and that it can operate only to recognize, confirm, or preserve an existing right or interest held or owned by him at the time such conveyance is made.

The rule that an exception or a reservation may operate to recognize, confirm, or preserve rights already existing in a stranger to a conveyance, however, does not apply to the deed of April 5, 1899, from A. B. Fleming and wife to J. L. Erwin, and its provisions do not serve to recognize, confirm, or preserve the right of subjacent support in the then owner of the severed coal, for the reason that the language used clearly indicates that the coal excepted and reserved is the coal which "belongs to The Gaston Gas Coal Company" and that the rights excepted and reserved "to mine, excavate and remove all of the coal not herein conveyed" are only such mining rights as "are vested in and belong to said company". The coal and the mining rights excepted and reserved by the deed of April 5, 1899, however described, were only such coal and such mining rights for its removal as then belonged to or were vested in The Gaston Gas Coal Company, a stranger to the deed, by virtue of the prior deeds under which, by various mesne conveyances, it owned and held the severed coal and the mining rights conveyed with such coal. As the mining clauses in those deeds did not convey, part with

or extinguish the right of the owner of the overlying land to subjacent support for the surface, The Gaston Gas Coal Company, and its successor in title, the defendant, Bethlehem Steel Corporation, never owned or acquired the right to remove the underlying coal without being required to provide adequate subjacent support for the surface of the overlying land.

The defendants cite and rely upon Section 7, Article 1, Chapter 36, Code, 1931, in support of their contention that the provision in the deed, dated April 5, 1899, from A. B. Fleming and wife to J. L. Erwin, which excepted and reserved so much of the coal conveyed by James Fleming and wife to A. B. Fleming and J. O. Watson and the right to mine, excavate and remove all of the coal not conveyed by the deed to Erwin, recognized, confirmed, and preserved the right of the owner of the coal so excepted and reserved to remove all of it without being required to provide support for the overlying surface. The language of the statute invoked by the defendants is: "An immediate estate or interest in, or the benefit of a condition respecting any estate in, property may be taken by a person under an instrument, although he be not a party thereto." Before the adoption of the Code of 1931, the substance of this statutory provision constituted the first part of Section 2 of Chapter 71 of the Code of 1923. That section in its entirety contained this language: "An immediate estate or interest in, or the benefit of a condition respecting any estate, may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise." The provisions of the section just quoted were contained in the Code of Virginia of 1860 and have been a part of the law of West Virginia since they were incorporated in the Code of 1868 as Section 2 of Chapter 71 of that Code. The second part of

Section 2 of Chapter 71 of the Code of 1923 was incorporated in the Code of 1931, as Section 12, Article 8, Chapter 55, and is in this form: "If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise." Before the original statute was separated into two parts which were incorporated in Chapter 36 and Chapter 55, respectively, of the Code of 1931, it was considered by this Court in several cases, among which are: *Nutter* v. *Sydenstricker*, 11 W. Va. 535; *Johnson* v. *McClung*, 26 W. Va. 659; *Jenkins* v. *Chesapeake and Ohio Railway Company*, 61 W. Va. 597, 57 S. E. 48, 49 L. R. A., N. S., 1166; *King* v. *Scott*, 76 W. Va. 58, 84 S. E. 954; *Hamilton* v. *Wheeling Public Service Company*, 88 W. Va. 573, 107 S. E. 401, 21 A. L. R. 433; *Petty* v. *Warren*, 90 W. Va. 397, 110 S. E. 826; and *State ex rel. West Virginia Sand and Gravel Company* v. *Royal Indemnity Company*, 99 W. Va. 277, 128 S. E. 439, 43 A. L. R. 552. Point 2 of the syllabus in the *Johnson* case is in these words: "Sec. 2, of ch. 71 of the Code means, as if written as follows, including the words in parenthesis: 'If a covenant or promise be made for the sole benefit of a person with whom it is not made, or (if a covenant or promise is made for the sole benefit of a person) with whom it is made jointly with others, such person may maintain in his own name any action thereon,' &c."; and this Court has consistently adhered to the view that the statute does not authorize a person who is not a party to a contract made for his benefit to sue upon such contract at law unless it was made for his sole benefit, or for the benefit of a designated class of which he is a member.

It is significant that the first part of Section 2 of Chapter 71 of the Code of 1923, which in substance now constitutes Section 7, Article 1, Chapter 36 of the Code of 1931, has not been interpreted or applied by this Court in any reported decision cited by counsel or, upon careful search, found by this Court with respect to its force or effect in

creating an estate or interest in property in favor of a person under an instrument to which he is not a party. It is obvious, however, that the statute does not operate, solely by reason of its provisions, to vest an estate or an interest in property in a person who is not a party to an instrument mentioned by the statute. In short, the statute is not self executing; it merely authorizes or permits a person to take an estate or an interest in property under an instrument to which he is not a party if its provisions are sufficient to vest such an estate or an interest in such person. Section 1, Article 1, Chapter 36, Code of 1931, provides that no estate of inheritance or freehold, or for a term of more than five years, in lands, or any other interest or term under which the whole or any part of the corpus of the estate may be taken, destroyed or consumed, except for domestic use, shall be created or conveyed unless by deed or will. The provision of this statute that no estate of inheritance or freehold, or for a term of more than five years, in lands, shall be conveyed unless by deed or will, has been in effect since the Code of 1868 in which it was incorporated as a part of Section 1 of Chapter 71. A statute which had been incorporated in the Code of 1868 as Section 4 of Chapter 71, and which later appeared as Section 4 of Chapter 71 in the Code of 1923, was in effect when the deed to Erwin was made in 1899, and provided that all real estate should, with respect to the conveyance of an immediate freehold, be deemed to lie in grant as well as in livery. This statute was omitted from the Code of 1931, in which was incorporated a new statute as Section 4, Article 3, Chapter 36, which abolished distinctions between various types of deeds and provides in part that "Any instrument which shows on its face a present intent to pass title to, or any interest, present or future, in real property, shall, if properly executed and delivered, be given effect according to its manifest intent." It is essential, however, in order to pass title to an estate by deed, that there be operative words which manifest intent to transfer the property described in the instrument, and the intent must be disclosed by the language of the deed and not by the mere act of the parties.

*Freudenberger Oil Company* v. *Simmons,* 75 W. Va. 337, 83 S. E. 995, Ann. Cas. 1918A, 873; *Steer* v. *Combs,* 121 W. Va. 509, 5 S. E. 2d 420; *State* v. *Morris,* 81 W. Va. 732, 95 S. E. 197; *Crookshanks* v. *Ransbarger,* 80 W. Va. 21, 92 S. E. 78; *Weinrich* v. *Wolfe,* 24 W. Va. 299. "To enable a deed to operate as an effectual conveyance there should be proper and sufficient words manifesting an intention to transfer an estate." 1 Devlin on Real Estate, Deeds, Section 211.

As already indicated, no title to the coal and the mining rights mentioned and excepted and reserved in the deed from A. B. Fleming and wife to J. L. Erwin passed to The Gaston Gas Coal Company by that deed. That no such title passed by that instrument is clear for several reasons. The grantors in that deed, the Flemings, did not own the coal or the mining rights excepted and reserved which, according to the language of the deed, were then owned by The Gaston Gas Coal Company. That company was not a party, but was a stranger, to the deed. The language of the deed which relates to the coal and the mining rights, which the deed recites belonged to The Gaston Gas Coal Company, does not manifest any intent of the grantors to pass title to such coal or mining rights to the coal company, or to any other person, but instead states that such coal is not conveyed and that it and the mining rights are excepted and reserved. Whether the words used amount to a reservation or an exception of the coal and the mining rights to which they relate, is not important, for neither a reservation nor an exception can operate to pass title to the thing reserved or excepted to a grantee or a stranger to the deed.

Though technically there is a distinction between an exception and a reservation, they are often regarded as synonymous. *Chapman* v. *Mill Creek Coal and Coke Company,* 54 W. Va. 193, 46 S. E. 262; *McDougal* v. *Musgrave,* 46 W. Va. 509, 33 S. E. 281; 5 Michie's Jurisprudence, Deeds, Section 91; 16 Am. Jur., Deeds, Section 298. In *McDougal* v. *Musgrave,* 46 W. Va. 509, 33 S. E. 281, this Court quotes with approval these statements from 1 Dev-

lin on Real Estate, Deeds, 3rd Edition, Sections 221 and 222. "There is a distinction between an exception and a reservation. By the former the grantor withdraws from the operation of the conveyance which is in existence, and included under the terms of the grant.", and "In every good reddendum or reservation there should be a concurrence of several things. One is, that the reservation must be made to the grantor, or to one of the grantors in the deed, and not to a stranger. Another is that it must be out of the estate granted, and not out of something extraneous." In *Harris* v. *Cobb*, 49 W. Va. 350, 38 S. E. 559, the opinion, citing *Snoddy* v. *Bolen*, 122 Mo. 479, 24 S. W. 142, 25 S. W. 932, 24 L. R. A. 507, contains this quotation: "An exception in a deed is always part of a thing in being and a part of the thing granted; while a reservation is of a thing not in being; and is newly created, as rent and the like. An exception withdraws from the operation of the conveyance some part of the thing granted, which but for the exception would have passed to the grantee under the general description; while the reservation is the creation, in behalf of the grantor, of some new right, issuing out of the thing granted, — that is to say, something which did not exist as an independent right." In 2 Devlin on Real Estate, Deeds, 3rd Edition, Section 979, these statements appear: "A reservation is of some new thing issuing out of what is granted; an exception is a withdrawal from the operation of the grant of some part of the thing itself. Says Chancellor Kent: 'A reservation is a clause in a deed whereby the grantor reserves some new thing to himself issuing out of the thing granted, and not in *esse* before; but an exception is always a part of the thing granted, or out of the general words and description in the grant. * * *. If the exception be valid, the thing excepted remains with the grantor, with the like force and effect as if no grant had been made'. * * *." See also 16 Am. Jur., Deeds, Section 298; 26 C. J. S., Deeds, Section 137. A valid reservation must be made to a grantor and not to a stranger to the deed; and no estate or interest can be created in a stranger by a reservation in a deed. 16 Am. Jur., Deeds, Section 299. In 26 C. J. S., Deeds, Sections

140c and 140a, the text contains the statements that "property cannot be conveyed by reservation" and that "property which is excepted is not granted". This Court, in the recent case of *Collins* v. *Stalnaker,* 131 W. Va. 543, 48 S. E. 2d 430, held, in Point 3 of the syllabus, that "While a clause in a deed of conveyance which is phrased as a reservation may be treated as an exception where it is necessary to do so in order to carry out the plain purpose of the parties to the instrument, even when so construed, it cannot operate actually to vest rights to the property excepted in persons who are strangers to the instrument." To the same effect are the cases of *Beckley National Exchange Bank* v. *Lilly,* 116 W. Va. 608, 182 S. E. 767, 102 A. L. R. 462, and *Gwinn* v. *Gwinn,* 77 W. Va. 281, 87 S. E. 371.

As the deed of April 5, 1899, from A. B. Fleming and wife to J. L. Erwin merely excepts and reserves the coal and the mining rights then owned by The Gaston Gas Coal Company, a stranger to the deed, and contains no words which manifest intent of the grantors to pass or convey any coal or mining rights to that company, but instead employs language which clearly excludes such coal and mining rights from the operation of the deed and which, as an exception or a reservation, could not and did not pass any interest or estate in coal or mining rights to The Gaston Gas Coal Company, the predecessor in title to the defendants, the provisions which had been incorporated in Section 2 of Chapter 71 of the Code of 1868, and which were in force at the date of the deed and are now incorporated in Section 7, Article 1, Chapter 36, and in Section 12, Article 8, Chapter 55, Code, 1931, did not apply to that deed, and The Gaston Gas Coal Company, or the defendants as its successors in title, did not take or acquire, under the statute, the right of the grantee, J. L. Erwin, to subjacent support for the surface of his land.

The special plea of the defendants does not present a valid defense to the cause of action set forth in each count of the declaration. The plea being fatally defective for that reason, the ruling of the circuit court in sustaining the demurrer was correct and it is affirmed.

*Ruling affirmed.*